# Exhibit A

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION
500 Indiana Ave., N.W., Rm-JM-170
Washington, D.C. 20001

**FILED** BY
CIVIL ACTIONS BRANCH

**JAN 0 7 2013**

Superior Court
of the District of Columbia
Washington, DC.

**13 - 0 0 0 0 1 1 6**

LILLARD & LILLARD, P.C.
1776 K STREET, N.W. SUITE 800
WASHINGTON, D.C. 20006
    MAILING ADDRESS: 8 LOUDON LANE
        ANNAPOLIS, MD. 21401-1219,

        *Plaintiff,*

    *v.*

CIVIL Action No.

Blue Cross & & Blue Shield Association, Inc.
1310 G Street NW
Washington, DC 20005

    Serve: William P. White, Commissioner
           Department of Insurance, Securities and Banking
           810 First Street, NE, Suite 701
           Washington, DC 20002

R&R Professional Recovery
P.O. Box 21575
Pikesville, MD 21282-1575

NCO Financial Systems
7595 Montevideo Road
Jessup, MD 20794-9323

First Federal Credit Control
24700 Chagrin Blvd.
Cleveland, OH 44122-5662

        and

Quantum Practice Management
P.O Box 25339
Cleveland, OH 44125

        *Defendants.*

## COMPLAINT FOR TRIAL BY JURY FOR COMPENSATORY, PUNITIVE, AND TREBLE DAMAGES FOR OLIGOPOLISTIC CORPORATE BAD FAITH AND VIOLATION OF THE DISTRICT OF



Case: 2013 CA 000116 B
0004785202
DKT: CABCFF

## COLUMBIA UNLAWFUL TRADE PRACTICES ACT, RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT, AND FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

Jurisdiction of this court is founded on D.C. Code Annotated, 1973 edition, as amended, Sec. 11-921, Unlawful Trade Practices act of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 et seq., 28-3904(r), 28-3905(k)(1)( C),   Racketeer Influenced & Corrupt Organization Act ["Civil RICO"], 18 U.S.C. §§ 1961-1968 [18 U.S.C. §§ 1961-1968 for insurance abuse, for denying coverage under provisions of insurance policy contracts, denying legitimate medical provider claims, denying medical provider claims even after "PIP exhaust," failing to exchange information with collection agencies about PIP exhaust, medical provider claims and for bad faith violation of certain duties and of the covenant of good faith and fair dealing [incorporating by reference allegations and findings in Athridge v. Aetna Cas. & Sur. Co., 351 F.3d 1166, 1171 (D.C. Cir. 2003) [hereinafter "Athridge"]; and for wrongful abusive dunning collection practices in violation of the Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq,

1. Plaintiff Lillard & Lillard, P.C. ["Lillard"] is a legal practice incorporated in the District of Columbia, whose surviving principal John F. Lillard, III is resident practicing Washington, D.C. attorney.

2. Defendant Blue Cross & & Blue Shield Association, Inc. [herein "Blue"] dba various entities are licensed insurance companies for health insurance coverage, mandated to behave in the public interest, headquartered and doing business in the District of Columbia, and amenable to CPPA jurisdiction under the doctrine of Athridge v. Aetna Cas. & Sur. Co., 351 F.3d 1166, 1171 (D.C. Cir. 2003), and amenable to RICO jurisdiction under the doctrine of *Humana, Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) having entered into a health insurance plan with Lillard under policy ID number 900566526, and having processed health insurance claims following a motor vehicle accident a year ago January 7, 2012:

| Dr. Trent, Orthopaedist | Actual | 3592.29 |
|---|---|---|
| Dr. Jahan, Neurologist | Actual | 680.09 |
| Rachel Strass, Acupuncture | Actual | 3954.00 |
| PT-AAHS | Actual | 3071.27 |

| | | |
|---|---|---|
| **MRI [lumbar]** | Actual | 1412.00 |
| **MRI [cervical]** | Actual | 1412.00 |
| **AAHS ER Radiologist's bill** | Actual | 510.00 |
| **AAHS Hospital ER** | Actual | 413.36 |
| **AAHS Hospital ER doctor** | Actual | 373.00 |
| **Total Medical Charges** | | **$15,418.01** |

These bills were also considered by PIP carrier GEICO under claim number 000-786-340-0101, for which

$10,000 PIP benefits were paid out, and an "exhaustion letter" dated September 5, 2012 was issued 4 months

**GEICO.**
geico.com

- Government Employees Insurance Company
- GEICO General Insurance Company
- GEICO Indemnity Company
- GEICO Casualty Company

P.O. Box 9505
Fredericksburg, VA 22403-9504

9/5/2012

John Lillard
8 Louden Ln
Annapolis, MD 21401-1219

Company Name:   Government Employees Insurance Company
Claim Number:   000786340-0101-147
Loss Date:   Saturday, January 7, 2012
Policyholder:   John Lillard
Injured Party:   John Lillard

Dear John Lillard,

The Medical coverage and/or Personal Injury Protection available to you on the claim
specified above has been exhausted. Therefore, we will not be able to make any further
payment for medical expenses you incurred as a result of this accident.

You may be entitled to additional benefits from your health insurance company. Any further
medical bills should be submitted to your health insurer with a copy of this letter.

If you have any questions, contact me at the number below. Please refer to your claim
number when writing or calling about this claim.

Sincerely,

Lisa Castellano, Examiner Code FF95
(540)286-4093
ago   Claims Department                                          . Despite the GEICO PIP exhaustion

[under protest, since Blue had a duty to pay notwithstanding 'collateral source' of PIP exhaust], Blue failed to

pay, Blue failed to contact, Blue failed to inform, or Blue failed to re-consider $15,418.01 in bills, despite its

coverage subject only to  its "individual annual deductible of $5,000

---

**SUMMARY OF BENEFITS**

1. Name:

2. Membership Number:

3. Effective Date:

This Policy is subject to:

1. an individual annual deductible of $5,000 dollars;

2. an annual family aggregate deductible of $10,000 dollars; and,

3. an individual out-of-pocket limit of $6,000 dollars.

Coinsurance Schedule:

All Policy benefits are paid at 80% of the Allowed Benefit, except for outpatient services to treat mental illnesses, emotional disorders, drug abuse, or alcohol abuse including psychological and neuropsychological testing for psychological diagnostic purposes (See Section 4.19 C.) Benefits provided for these visits are based on 80% of the Allowed Benefit for the first 5 visits that occur in a calendar year, 65% of the Allowed Benefit for the 6th through 30th visit, and 50% of the Allowed Benefit for the 31st visit and any visits thereafter. These visits are subject to the deductible.

NOTE:    See Section 2.8 Services Covered at 100% of the Allowed Benefit for services covered at 100% of the Allowed Benefit.

Preventive Benefits (see Section 4.11) are paid at 100% after a $10.00 copayment by the Member.

---

dollars                                                                          Accordingly, Blue has in one year of

claims handling paid nearly nothing toward the GEICO-audited $15,418.01 in bills, but rather inundated its

policyholder with 80 pages of Explanation of Benefits forms showing claims were denied and Blue paid zero.











Self-evidently, of the $15,418.01 in bills, GEICO accepted at least its $10,000 PIP limits, so Blue's refusal to pay or accept or consider even those bills above the $5000 deductible was unlawful. Lillard, Blue's policyholder, paid Blue $178/month in health insurance premiums and received no benefits.

3. Defendants R&R Professional Recovery Inc, NCO Financial Systems, Inc., First Federal Credit Control, Inc and Quantum Practice Management ["Bill Collectors"] are collection agencies licensed in the public interest to conduct business in the District of Columbia, and to conduct themselves in accordance with fair collection practices, but mercilessly dunned Lillard by mail and by telephone. Defendants engaged in abusive collection practices, despite Lillard's cease & desist instruction. Lillard demanded Bill Collectors contact GEICO regarding its exhaustion and bill Blue as instructed, when Lillard was treated by health care providers for whom the collection agencies conducted their unlawful dunning, since the Bill Collectors provider-principals had an ethical and legal duty to bill Blue, and send balance due bills for the approximately 20% uncovered amounts, which Lillard directed be paid by PIP. Rather than make proper contact with Blue and GEICO, the Bill Collectors threatened to ruin Lillard's credit, a foreseeable consequence of the conspiracy between Blue and medical Bill Collectors.

## COUNT ONE--CPPA

4. Repeating and realleging paragraphs 1-3, Blue's negotiation of Lillard's claims involved intentional disparagement, delays, obfuscation, and rude bad faith, falsely denying coverage. The aforementioned conduct by the Defendant was extreme, outrageous, cruel, and beyond the limits of decency in society. The Defendant's aforementioned conduct was malicious, willful, and intentional, conspiring to wrap up the process in red tape to discourage patients from receiving benefits.

5. Lillard had a right to instruct, expect, and assume his health care providers would coordinate their billing efforts to collect from Blue, to convince Blue that after the GEICO PIP exhaust, since the $15,418.01 in bills, far exceeded the Blue $5000 annual deductible, and that the balance must have been paid. Since over $5000 in PIP benefits actually paid the providers, Lillard had a right to assume that the balance of $15,418.01 in bills would have been paid in full by Blue. Lillard had a right to assume that medical providers would not sick Bill Collectors on Lillard, nor threaten his credit rating, but professionally collect from Blue at

least the 80% allowable, then bill Lillard for the balance, so as to allow Lillard to allocate PIP funds to the balances due. Self-evidently, Lillard had a right to assume that Blue would reimburse Lillard for the amounts previously paid to providers by GEICO, leaving funds with which to cover the 20% unpaid balances.

6.   Despite repeated attempts to clarify Blue's participation in the Medicare supplemental arrangements, Lillard received a cancelation notice from Blue dated October 21, 2012, rather than an orderly transformation into a "medigap" policy, in light of his having turned 65 on August 2, 2012, received his Medicare card, thus no longer needing the same personal Blue coverage, and having sought clarity around Blue's Medigap coverage. But Blue was evasive, and the Blue Medicare online process was unfathomable. Lillard's inquiries and premium payment issues were reasonable, where he cannot be deemed to have unclean hands nor in *pari delicto*.

7.   Blue's red-tape chiseling, intimidating, non-payment of claims, and ham-handed conduct has produced obscene profits, where during the worst U.S. recession since the Great Depression, Blue's net income has skyrocketed. For example, in depressed Illinois Blue's net income was $1.75 Billion annualized http://www.chicagorealestatedaily.com/article/20110618/ISSUE01/306189984/blue-cross-profits-surge; Blue's net income was $107.3 million in North Carolina http://insurancenewsnet.com/article.aspx?id=219434&type=lifehealth#.UOooJX/8ImY and from 2006 to September 2011, "CareFirst BlueChoice, an independent Blue Cross plan that operates in Northern Virginia, Maryland, and the District of Columbia, experienced a 545% increase in cumulative net income in six years." http://www.feeling-blue.org/states/va/providers/31.. . Properly instructed, should the jury find a CPPA violation, the average jury award for punitive damages is 2% of net income, which for CareFirst is $416.7 million, www.feeling-blue.org/states/va/providers/31/fact_sheet resulting in a punitive damages award of $8,334,000.00.

A LOOK AT BLUE CROSS BLUE SHIELD
**BUSINESS PRACTICES.**

**Anthem and independent Blue Cross Blue Shield plans have been amassing record profits and increasing market dominance throughout the US for more than 20 years. Feeling Blue takes a look at the facts on a state-by-state basis, following news, trends, and financials for the up-to-date look at both Anthem and independent Blue Cross Blue Shield plans. Read on for detailed information and contact us to share your thoughts.**

**CareFirst BlueChoice, an independent Blue Cross plan that operates in Northern Virginia, Maryland, and the District of Columbia, experienced a 545% increase in cumulative net income in six years. During a similar timeframe, member enrollment and MLR, the percent of every premium dollar spent on care, experienced a steady decline.**



**Why This Matters**

The health care industry is complicated. Transparency and accountability are critical when it comes to empowering consumers to make the best decisions with something as important as health care coverage. History tells us that those priorities might not carry as much weight for health insurance providers when it comes to their own business, but one thing is for sure - knowing more helps us make better choices. Blue Cross Blue Shield plans - whether WellPoint/Anthem, HCSC, or independent nonprofit - operate in every state in the US, and often hold more than 50% of the market share in those states. Dominant market share comes with serious responsibilities to the public, to the health care system, and to the health plan's own customers - the employers, government entities, seniors, and individual policyholders who pay for insurance coverage. The goal of Feeling Blue is to provide a "one-stop-shop" for important facts, figures, media coverage, and analyst reports for one of our nation's largest health insurance organizations, WellPoint/Anthem and the independent Blue Cross Blue Shield Association. Payers and health care providers alike must be held accountable for their actions and transparency helps make this happen.

8.  Lillard continues to be damaged, including suffering great mental anguish and psychological

damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations.

9.   Blue, in conspiracy with Bill Collectors, engaged in behavior which a jury must find unconscionable, in violation of CPPA.

10. Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone, denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to trebling and punitive damages plus attorneys fees, under CPPA.

## . COUNT TWO--RICO

11. Repeating and realleging paragraphs 1-10, Blue, in conspiracy with Bill Collectors, engaged in racketeering conduct to defraud medical providers and Lillard policyholder, which a jury must find violated RICO for civil penalties since a racketeering act may be based on "aiding and abetting," since scienter may be established by the collective knowledge of the Blue and Bill Collector employees and representatives, since this pattern of behavior is pervasive in medical billing industry among health insurers and medical billing representatives, including defendant herein, thus establishing a  reasonable likelihood of future violations by a preponderance of the evidence, that the equitable authority of this court is invoked to correct the abuses.  The RICO claim is predicated upon violations of the mail fraud statute, 18 U.S.C. § 1341, since denial of claims beyond the $5000 deductible is fraudulent, upon Blue's conspiracy with Bill Collectors, and Blue's fraudulent denial of medical providers' claims transmitted electronically, thus wire fraud 18 U.S.C. § 1343. The ongoing scheme to defraud doctors, was established in Love et al. v. Blue Cross Blue Shield Association, et al., _574 F.Supp.2d 1288_ (2008), http://www.crowell.com/pdf/managedcare/BCBS_OrderApprovingSettlement4-22-08.pdf; see Blue Cross and Blue Shield of Michigan v. Kamin, 876 F.2d 543, 545 (6th Cir.1989), single scheme state a violation of civil RICO simply by repeatedly bilking the same victim, as here, 80 pages of electronic

communications with 9 medical providers, a substantial course of conduct evidencing racketeering activity. United States v. Huber, 603 F.2d 387, 393-94 (2d Cir.1979), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Moreover, RICO violations are based upon 5th [nor shall private property be taken for public use, without just compensation] & 14th Amendment [nor shall any State deprive any person of life, liberty, or property, without due process of law]; taking of private property under color of Affordable Care Act regulatory authority.

12. Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone, denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to trebling damages plus attorneys' fees, under RICO.

## COUNT THREE--FDCPA

13. Repeating and realleging paragraphs 1-12, Blue, in conspiracy with Bill Collectors, engaged in billing abuse, since this pattern of behavior is pervasive in medical billing industry among health insurers and medical billing representatives, including defendant herein, thus establishing a reasonable likelihood of future violations by a preponderance of the evidence, that the equitable authority of this court is invoked to correct the abuses.

14. Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone, denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to trebling damages plus attorneys' fees, under FDCPA.

## COUNT FOUR--FDCPA

15. Repeating and realleging paragraphs 1-14, Blue, in conspiracy with Bill Collectors, engaged in billing abuse, inasmuch as Lillard's repeated requests for medical billing personnel to coordinate coverage with Blue, PIP exhaustion, and proper clear understandable balance-due statement, were ignored, but Lillard was subject to dunning and denials. Defendant Bill Collectors breached their duty to inquire of their client medical providers the Blue filing information, to contact Blue, to coordinate the GEICO exhaust trigger for payments, and to collect their bills from Blue, but failed to do so, choosing rather the 'gangland' style of threats and abuse. Since this pattern of behavior is pervasive in medical billing industry among health insurers and medical billing representatives, including defendant herein, thus establishing a reasonable likelihood of future violations by a preponderance of the evidence, that the equitable authority of this court is invoked to correct the abuses.

16. Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone, denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to trebling damages plus attorneys' fees, under FDCPA.

### COUNT FIVE--EQUITY

17. Repeating and realleging paragraphs 1-16, since this pattern of behavior is pervasive in medical billing industry among health insurers and medical billing representatives, including defendants herein, thus establishing a reasonable likelihood of future violations by a preponderance of the evidence, Lillard invokes the equitable authority of this court to correct the abuses. Lillard would submit that divestiture, dissolution, license revocation, and other ameliorative measures should be taken.

WHEREFORE, Lillard demands judgment against defendants in accordance with D.C. Code § 28-3905(g)(5) remedies including punitive damages, treble damages, and/or reasonable attorney's fees, as are reasonable and necessary to identify, correct, or prevent the conduct which violated District law:

1. in the sum of TWO HUNDRED THOUSAND DOLLARS [$200,000] for compensatory damages to Lillard for insurance abuse and cruel claims and collection practices;

2. in the sum of SIX HUNDRED THOUSAND DOLLARS [$600,000], being the trebled damages to Lillard;

3. in the sum of SIX HUNDRED THOUSAND DOLLARS [$600,000], being the trebled damages to Lillard for covered claim reimbursement for total loss of structure and loss of use;

4. in the sum of EIGHT MILLION THREE HUNDRED THIRTY-FOUR THOUSAND DOLLARS [$8,334,000.00], representing punitive damages of 2% of Blue's latest available] *www.feeling-blue.org/states/va/providers/31/fact_sheet* net income of FOUR HUNDRED SIXTEEN MILLION SEVEN HUNDRED THOUSAND DOLLARS [$416.7 million] for Lillard;

5. for attorneys' fees with interest and costs,

6. for broad equitable remedy to address unlawful conduct, including ordering intrusive; structural changes in defendant wrongdoers' entities and practices, including divestiture, dissolution, license revocation, and other ameliorative measures as the court deems just,

7. for disgorgement of all premiums paid by Lillard to Blue;

8. for limitations on future activities, *inter alia*, ordering Blue "medigap" coverage to Lillard without payment of premium, free for life;

9. Since RICO provides for injunction to non-parties in various circumstances, for injunction against the above-listed non-party medical providers from collection activities against Lillard during the pendency of this case, or alternatively an invitation to interplead under Rule 22 for reimbursement of unpaid bills; and

10. for such other and further relief as the court deems just.

Respectfully submitted,

JOHN F. LILLARD, III D.C. Bar 197194
8 LOUDON LANE
ANNAPOLIS, MD. 21401-1219
(410) 268-1900
*Pro-se* & Interim counsel for Lillard & Lillard, P.C.

## PRAYER FOR JURY TRIAL

Lillard hereby prays a trial by jury on their claims as set forth in the above complaint.

JOHN F. LILLARD, III

DISTRICT OF COLUMBIA, ss:

John Lillard, being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendants to Lillard, exclusive of all set-offs and just grounds of defense.

Subscribed and sworn to before me this_____day of January 2013_____

(Notary Public/Deputy Clerk)

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

*Lindsey & Lindsey*

Plaintiff

vs.

*First Federal Credit Control*

Defendant

**13 - 0 0 0 0 1 1 6**

Case Number _____

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_John Lindsey_
Name of Plaintiff's Attorney

_8 London Ln_
Address

_Annapolis, MD 21401_

_800-227-5291_
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date ___1/7/13___

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Dể có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011

CASUM.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

LILLARD LILLARD PC
_____
Plaintiff

vs.

Case Number **13 - 0 0 0 0 1 1 6**

NCO FINANCIAL SYSTEMS
_____
Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

JOHN LILLARD
_____
Name of Plaintiff's Attorney

8 LONGDON LN
_____
Address
ANNAPOLIS, MD. 21401

800- 727-5296
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____1/7/13_____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Dể có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

**IMPORTANT:** IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011

CASUM.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

LILLARD & LILLARD, P.

_____
Plaintiff

vs.

R & R PROFESSIONAL RECOVERY

_____
Defendant

Case Number **13 - 0 0 0 0 1 1 6**

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

John Lillard
_____
Name of Plaintiff's Attorney

8 Loudon LN
_____
Address
Annapolis MD 21401

800-227-0529
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____ 1/7/13

如需翻译, 请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011

CASUM.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
Washington, D.C. 20001 Telephone: (202) 879-1133

LILARDELICARD

_____
Plaintiff

**13 - 0 0 0 0 1 1 6**

vs.

QUANTUM PRACTICE MGT

_____
Defendant

Case Number

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

JOHN LILARD
_____
Name of Plaintiff's Attorney

5 LOUDON LN
_____
Address
ANNAPLIS MD 21401

800-227-5291
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date  1/7/13

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011

CASUM.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

*LILLARD & LILLARD Jr.*
_____
Plaintiff

vs.

Case Number **13 - 0000116**

*BLUE CROSS & BLUE SHIELD*
_____
Defendant

**SUMMONS**

To the above named Defendant:  *WILLIAM F. WHITE, CORP., DI SB, 810 1st St NE. 20002*

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*John Lillard*
_____
Name of Plaintiff's Attorney

*8 London Ln*
_____
Address
*Hunards MD 21401*

*800 227-5291*
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date  *1/7/13*

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요         የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

LILLARD & LILLARD, P.C.                                    C.A. No.     2013 CA 000116 B
    Vs.
BLUE CROSS & BLUE SHIELD ASSOCIATION, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge MICHAEL L RANKIN
Date:  January 7, 2013
Initial Conference: 9:30 am, Friday, April 12, 2013
Location:  Courtroom 517
        500 Indiana Avenue N.W.
        WASHINGTON, DC  20001

Caio.doc

# ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET   **13 - 0 0 0 0 1 1 6**

_Lillard & Lillard PC_

Case Number: _____

vs

_BLUECROSS ETC_

Date: _Jan 7, 2013_

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)* _John F. Lillard, PC_<br>Firm Name: _Lillard & Lillard PC_<br>Telephone No.:            Six digit Unified Bar No.:<br>                                _197192_ | Relationship to Lawsuit<br>☐ Attorney for Plaintiff<br>☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury        ☐ 6 Person Jury        ☒ 12 Person Jury
Demand: $ _8.5 million_                              Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____   Judge: _____   Calendar #:_____

Case No.:_____   Judge: _____   Calendar#:_____

---

**NATURE OF SUIT:**   *(Check One Box Only)*

### A. CONTRACTS

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 15 Special Education Fees

☐ 07 Personal Property
☐ 09 Real Property-Real Estate
☐ 12 Specific Performance
☐ 13 Employment Discrimination

**COLLECTION CASES**

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 16 Under $25,000 Consent Denied
☐ 17 OVER $25,000

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass
☐ 06 Traffic Adjudication

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☒ 08 Fraud

☐ 09 Harassment
☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile, Not Malpractice)

☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

---

SEE REVERSE SIDE AND CHECK HERE ☐ IF USED

CV-496/May 12

# Information Sheet, Continued

## C. OTHERS

### I.

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 04 Condemnation (Emin. Domain)
- ☐ 05 Ejectment
- ☐ 07 Insurance/Subrogation
  Under $25,000 Pltf.
  Grants Consent
- ☐ 08 Quiet Title
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)

- ☐ 10 T.R.O./ Injunction
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award
  (DC Code § 16-4315)

- ☐ 25 Liens: Tax/Water Consent Granted
- ☐ 26 Insurance/ Subrogation
  Under $25,000 Consent Denied
- ☐ 27 Insurance/ Subrogation
  Over $25,000
- ☐ 28 Motion to Confirm Arbitration
  Award (Collection Cases Only)
- ☐ 26 Merit Personnel Act (OHR)
- ☐ 30 Liens: Tax/ Water Consent Denied
- ☐ 31 Housing Code Regulations

### II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-1519 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a) (1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

_____
Attorney's Signature

_____1/7/20 13_____
Date

CV-496/May 12

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION
### 500 Indiana Ave., N.W., Rm-JM-170
### Washington, D.C. 20001

| | |
|---|---|
| LILLARD & LILLARD, P.C., aka John F. Lillard, III<br>1776 K STREET, N.W. SUITE 800<br>WASHINGTON, D.C. 20006<br>    MAILING ADDRESS: 8 LOUDON LANE<br>                  ANNAPOLIS, MD. 21401-1219,<br><br>         *Plaintiff,*<br><br>    v.<br><br>Blue Cross and Blue Shield Association, Inc. dba aliases:<br>Anthem, CareFirst, BlueChoice, WellPoint/Anthem, HCSC<br>1310 G Street NW<br>Washington, DC 20005<br>        Serve: William P. White, Commissioner<br>        Department of Insurance, Securities and Banking<br>        810 First Street, NE, Suite 701<br>        Washington, DC 20002<br><br>R&R Professional Recovery<br>P.O. Box 21575<br>Pikesville, MD 21282-1575<br><br>NCO Financial Systems<br>7595 Montevideo Road<br>Jessup, MD 20794-9323<br><br>First Federal Credit Control<br>24700 Chagrin Blvd.<br>Cleveland, OH 44122-5662<br><br>Alacrity Collections Corporation<br>P.O. Box 586<br>Riva, MD 21140-0486<br><br>        and<br><br>Quantum Practice Management<br>P.O Box 25339<br>Cleveland, OH 44125<br><br>        *Defendants,* | CIVIL Action No. 13-0000116 |

SECOND AMENDED COMPLAINT FOR TRIAL BY JURY FOR COMPENSATORY, PUNITIVE, AND
TREBLE DAMAGES FOR OLIGOPOLISTIC CORPORATE BAD FAITH AND VIOLATION OF THE
DISTRICT OF COLUMBIA UNLAWFUL TRADE PRACTICES ACT, RACKETEER INFLUENCED &
CORRUPT ORGANIZATION ACT, PATIENT PROTECTION AND AFFORDABLE CARE ACT
INCORPORATED ANTITRUST LAWS, AND FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

Jurisdiction of this court is founded on D.C. Code Annotated, 1973 edition, as amended, Sec. 11-921,

Unlawful Trade Practices act of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C.

Code § 28-3901 et seq., 28-3904(r), 28-3905(k)(1)( C), Racketeer Influenced & Corrupt Organization Act

["Civil RICO"], 18 U.S.C. §§ 1961-1968 [18 U.S.C. §§ 1961-1968, Patient Protection and Affordable Care Act,

Pub.L. 111–148, 124 Stat. 119 ["Affordable ObamaCare"], for insurance abuse, for denying coverage under

provisions of insurance policy contracts, denying legitimate medical provider claims, denying medical provider

claims even after "PIP exhaust," failing to exchange information with collection agencies about PIP exhaust and

medical provider claims, for premium price gouging, and for bad faith violation of certain duties and of the

covenant of good faith and fair dealing [incorporating by reference allegations and findings in Athridge v.

Aetna Cas. & Sur. Co., 351 F.3d 1166, 1171 (D.C. Cir. 2003) [hereinafter "Athridge"]; and for wrongful

abusive dunning collection practices in violation of the Federal Fair Debt Collection Practices Act (FDCPA), 15

U.S.C.§ 1692 et seq,

1.  Plaintiff Lillard & Lillard, P.C. ["Lillard"] is a legal practice incorporated in the District of

Columbia, whose surviving principal John F. Lillard, III is resident practicing Washington, D.C. attorney, with

a mailing address 8 Loudon Lane, Annapolis, MD 21401-1219.

2.  Defendant Blue Cross & & Blue Shield Association, Inc. [herein "Blue"] dba various alias

entities, Anthem and independent Blue Cross Blue Shield plans, CareFirst BlueChoice, an independent Blue

Cross plan that operates in Northern Virginia, Maryland, and the District of Columbia, WellPoint/Anthem,

HCSC, or independent nonprofit - operate in every state in the US, and often hold more than 50% of the market

share in those states, which are licensed insurance companies for health insurance coverage, mandated to

behave in the public interest,  headquartered and doing  business in the District of Columbia, and amenable to

CPPA jurisdiction under the doctrine of Athridge, amenable to RICO jurisdiction under the doctrine of

Humana, Inc. v. Forsyth, 525 U.S. 299, 307 (1999) having entered into a health insurance plan with Lillard

under policy ID number 900566526, *regardless whether subsequent individual vs. law firm policy,* land having

processed health insurance claims following a motor vehicle accident a year ago January 7, 2012:

| Dr. Trent, Orthopaedist | Actual | 3592.29 |
|---|---|---|
| Dr. Jahan, Neurologist | Actual | 680.09 |
| Rachel Strass, Acupuncture | Actual | 3954.00 |
| PT-AAHS | Actual | 3071.27 |
| MRI [lumbar] | Actual | 1412.00 |
| MRI [cervical] | Actual | 1412.00 |
| AAHS ER Radiologist's bill | Actual | 510.00 |
| AAHS Hospital ER | Actual | 413.36 |
| AAHS Hospital ER doctor | Actual | 373.00 |
| **Total Medical Charges** | | **$15,418.01** |

These bills were also considered by PIP carrier GEICO under claim number 000-786-340-0101, for which

$10,000 PIP benefits were paid out, and an "exhaustion letter" dated September 5, 2012 was issued 4 months

**GEICO.**
geico.com

: Government Employees Insurance Company
: GEICO General Insurance Company
: GEICO Indemnity Company
: GEICO Casualty Company

P.O. Box 9505
Fredericksburg, VA 22403-9504

9/5/2012

John Lillard
8 Louden Ln
Annapolis, MD 21401-1219

Claim Number:        000786340-0101- 147
Loss Date:           Saturday, January 7, 2012
Policyholder:        John Lillard
Injured Party:       John Lillard

Dear John Lillard,

The Medical coverage and/or Personal Injury Protection available to you on the claim
specified above has been exhausted. Therefore, we will not be able to make any further
payment for medical expenses you incurred as a result of this accident.

You may be entitled to additional benefits from your health insurance company. Any further
medical bills should be submitted to your health insurer with a copy of this letter.

If you have any questions, contact me at the number below. Please refer to your claim
number when writing or calling about this claim.

Sincerely,

Lisa Castellanos, Examiner Code FF95
(540)286-4093
ago   Claims Department                                          . Despite the GEICO PIP

exhaustion [under protest, since Blue had a duty to pay notwithstanding 'collateral source' of PIP exhaust], Blue

failed to pay, Blue failed to contact, Blue failed to inform, or Blue failed to re-consider $15,418.01 in bills,

despite its coverage subject only to its "individual annual deductible of $5,000

## SUMMARY OF BENEFITS

1.   Name:

2.   Membership Number:

3.   Effective Date:


This Policy is subject to:

1.   an individual annual deductible of $5,000 dollars;

2.   an annual family aggregate deductible of $10,000 dollars; and,

3.   an individual out-of-pocket limit of $6,000 dollars.


Coinsurance Schedule:

All Policy benefits are paid at 80% of the Allowed Benefit, except for outpatient services to treat mental illnesses, emotional disorders, drug abuse, or alcohol abuse including psychological and neuropsychological testing for psychological diagnostic purposes (See Section 4.19 C.)  Benefits provided for these visits are based on 80% of the Allowed Benefit for the first 5 visits that occur in a calendar year, 65% of the Allowed Benefit for the 6th through 30th visit, and 50% of the Allowed Benefit for the 31st visit and any visits thereafter.  These visits are subject to the deductible.

NOTE:    See Section 2.8 Services Covered at 100% of the Allowed Benefit for services covered at 100% of the Allowed Benefit.

dollars

Preventive Benefits (see Section 4.11) are paid at 100% after a $10.00 copayment by the Member.

Accordingly, Blue

has in one year of claims handling paid nearly nothing toward the GEICO-audited $15,418.01 in bills, but rather

inundated its policyholder with 80 pages of Explanation of Benefits forms showing claims were denied and

Blue paid zero.











Self-evidently, of the $15,418.01 in bills, GEICO accepted at least its $10,000 PIP limits, thus warranting the

assumption bills were 'reasonable and necessary,' and should likewise have been accepted by Blue for payment.

So Blue's refusal to pay or accept or consider even those bills above the $5000 deductible was unlawful.

Lillard, Blue's policyholder, paid Blue $178/month in health insurance premiums and received no benefits.

3. As listed above, Lillard's nine [9] medical providers were instructed to bill Blue, and exhaust PIP benefits through GEICO, then send 'balance due' bills after proper collection from health insurance. Since the bills of $15,418.01 exceeded the $5000 Blue deductible, but also GEICO paid 1/3 of the bills from PIP, Lillard had a right to instruct his providers to submit to Blue for reimbursement of presumptive 80% of covered expenses above $5000 deductible, thus Blue payments of approximately $8000. By assignment, 1/3 of the bills were paid by PIP. Thus, if $10,418.01 exceeded the $5000 deductible and 80% were paid, that would leave $2000-2500 in unpaid balances, except that since AAMC bills for ER and PT, as well as MRI charges, might well have waived the 20% unpaid health insurance gaps. Thus, it was anticipated that Lillard's contribution to unpaid bills would have been minimal. Moreover, Blue would reimburse Lillard for covered amounts already paid by PIP. Yet, the providers failed to do so. Instead, without warning, without written notice, without verbal explanation, without monthly statements of their collection status from Blue, providers rather shirked their responsibility, and hired collection agencies. Instead of pursuing Blue, collection agencies, but, instead, despite Lillard's cease & desist instruction to cease and desist and to bill Blue, defendants R&R Professional Recovery Inc, NCO Financial Systems, Inc., First Federal Credit Control, Inc., Alacrity Collections Corporation, and Quantum Practice Management ["Bill Collectors"] collection agencies licensed in the public interest to conduct business in the District of Columbia and to conduct themselves in accordance with fair collection practices, defiantly, unlawfully, and mercilessly dunned Lillard by mail and by telephone. Defendants engaged in abusive collection practices, conducted their unlawful dunning, since the Bill Collectors provider-principals had an ethical and legal duty to bill Blue, and send balance due bills for the approximately 20% uncovered amounts, which Lillard directed be paid by PIP. Rather than make proper contact with Blue and GEICO, the Bill Collectors threatened to ruin Lillard's credit, a foreseeable consequence of the conspiracy between Blue and medical Bill Collectors.

## VENUE-BULGE RULE WITHIN 100 MILE RADIUS

4. Regarding venue, Lillard conducts a portion of his business in the District of Columbia, and

transparently Blue Cross is headquartered likewise in the District of Columbia, acting through its alter egos whose corporate veils are herein requested to be pierced, not to mention that the Bill Collectors manifestly engage in collections within the District of Columbia. However, should there be any venue quibble, Lillard invokes the 100-mile *Bulge Rule* of FRCP 4(k)(1)(B) inasmuch as every element of proof [*e.g.,* Annapolis and Alexandria contacts, health care providers] occurred within 40 miles of the U.S. Capitol, certainly within the 100-mile bulge rule radius.

## COUNT ONE--CPPA

5.  Repeating and realleging paragraphs 1-4, Blue's negotiation of Lillard's claims involved intentional disparagement, delays, obfuscation, and rude bad faith, falsely denying coverage. The aforementioned conduct by the Defendant was extreme, outrageous, cruel, and beyond the limits of decency in society. The Defendant's aforementioned conduct was malicious, willful, and intentional, conspiring to wrap up the process in red tape to discourage patients from receiving benefits.

6.  Lillard had a right to instruct, expect, and assume his health care providers would coordinate their billing efforts to collect from Blue, to convince Blue that after the GEICO PIP exhaust, since the $15,418.01 in bills, far exceeded the Blue $5000 annual deductible, and that the balance must have been paid. Since over $5000 in PIP benefits actually paid the providers, Lillard had a right to assume that the balance of $15,418.01 in bills would have been paid in full by Blue. Lillard had a right to assume that medical providers would not sick Bill Collectors on Lillard, nor threaten his credit rating, but professionally collect from Blue at least the 80% allowable, then bill Lillard for the balance, so as to allow Lillard to allocate PIP funds to the balances due. Self-evidently, Lillard had a right to assume that Blue would reimburse Lillard for the amounts previously paid to providers by GEICO, leaving funds with which to cover the 20% unpaid balances.

7.  Despite repeated attempts to clarify Blue's participation in the Medicare supplemental arrangements, Lillard received a cancelation notice from Blue dated October 21, 2012, rather than an orderly transformation into a "medigap" policy, in light of his having turned 65 on August 2, 2012, received his Medicare card, thus no longer needing the same personal Blue coverage, and having sought clarity around

Blue's Medigap coverage. But Blue was evasive, and the Blue Medicare online process was unfathomable.

Lillard's inquiries and premium payment issues were reasonable, where he cannot be deemed to have unclean

hands nor in *pari delicto.*

    8.    Blue's aforesaid red-tape chiseling, intimidating, non-payment of claims, and ham-handed

conduct has produced obscene profits, where during the worst U.S. recession since the Great Depression, Blue's

net income has skyrocketed.  For example, in depressed Illinois Blue's net income was $1.75 Billion annualized

*http://www.chicagorealestatedaily.com/article/20110618/ISSUE01/306189984/blue-cross-profits-surge*; Blue's net income was $107.3

million in North Carolina *http://insurancenewsnet.com/article.aspx?id=219434&type=lifehealth#.UOooJXt8ImY* and from 2006 to

September 2011, "CareFirst BlueChoice, an independent Blue Cross plan that operates in Northern Virginia,

Maryland, and the District of Columbia, experienced a 545% increase in cumulative net income in six years."

*http://www.feeling-blue.org/states/va/providers/31,,* .  Properly instructed, should the jury find a CPPA violation, the

average jury award for punitive damages is 2% of net income, which for CareFirst is $416.7 million, *www.feeling-*

*blue.org/states/va/providers/31/fact_sheet* resulting in a punitive damages award of $8,334,000.00.



**FEELING BLUE: A LOOK AT BLUE CROSS BLUE SHIELD BUSINESS PRACTICES.**

Anthem and independent Blue Cross Blue Shield plans have been amassing record profits and increasing market dominance throughout the US for more than 20 years. Feeling Blue takes a look at the facts on a state-by-state basis, following news, trends, and financials for the up-to-date look at both Anthem and independent Blue Cross Blue Shield plans. Read on for detailed information and contact us to share your thoughts.

CareFirst BlueChoice, an independent Blue Cross plan that operates in Northern Virginia, Maryland, and the District of Columbia, experienced a 545% increase in cumulative net income in six years. During a similar timeframe, member enrollment and MLR, the percent of every premium dollar spent on care, experienced a steady decline.

Why This Matters

The health care industry is complicated. Transparency and accountability are critical when it comes to empowering consumers to make the best decisions with something as important as health care coverage. History tells us that those priorities might not carry as much weight for health insurance providers when it comes to their own business, but one thing is for sure - knowing more helps us make better choices. Blue Cross Blue Shield plans - whether WellPoint/Anthem, HCSC, or independent nonprofit - operate in every state in the US, and often hold more than 50% of the market share in those states. Dominant market share comes with serious responsibilities to the public, to the health care system, and to the health plan's own customers - the employers, government entities, seniors, and individual policyholders who pay for insurance coverage. The goal of Feeling Blue is to provide a "one-stop-shop" for important facts, figures, media coverage, and analyst reports for one of our nation's largest health insurance organizations, WellPoint/Anthem and the independent Blue Cross Blue Shield Association. Payers and health care providers alike must be held accountable for their actions and transparency helps make this happen.



9.   Lillard continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations.

10. Blue, in conspiracy with Bill Collectors, engaged in behavior which a jury must find unconscionable, in violation of CPPA.

11. Lillard has suffered damage by receipt of nearly 100 contacts by mail

and by telephone, denying payment of his medical bills without recourse, loss of his reputation and

creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological

damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and

enforcement of unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's

damages are subject to trebling and punitive damages plus attorneys fees, under CPPA.

## . COUNT TWO--RICO

12. Repeating and realleging paragraphs 1-11, Blue, in conspiracy with Bill Collectors, engaged

in racketeering-organized-crime conduct, having been a member of the health insurance enterprise that has

committed any two of 35 crimes within a 10 year period [inter alia, defrauding Lillard and Lillard's medical

providers, extortion of health insurance premiums from Lillard and from aliens illegally in the U.S., obstruction

of justice by depriving policy holders of legal remedies, and other criminal behavior detailed hereinafter]. Blue,

in conspiracy with Bill Collectors, is chargeable with racketeering, as indicated by case and comment citations

hereinafter. Blue, in conspiracy with Bill Collectors, has contravened the Patient Protection and Affordable

Care Act ["PPACA"] commonly called Obamacare Pub.L. 111-148, 124 Stat. 119, to be codified as amended at

scattered sections of the Internal Revenue Code and in 42 U.S.C., to defraud medical providers and Lillard

policyholder.  As racketeering-organized-crime conduct predicate, the jury must find violated RICO for civil

penalties since a racketeering act may be based on "aiding and abetting," since scienter may be established by

the collective knowledge of the Blue and Bill Collector employees and representatives, and since this pattern of

behavior is pervasive in the medical billing industry, including *inter alia* defendants herein.  Further, the court is

empowered to invoke equity remedies to correct the abuses, considering a reasonable likelihood of future

violations by a preponderance of the evidence. *Inter alia*, RICO claims are predicated upon mail fraud, 18

U.S.C. § 1341, since denial of claims beyond the $5000 deductible is fraudulent, predicated upon wire fraud 18

U.S.C. § 1343, considering  Blue's conspiracy with Bill Collectors and fraudulent denial of medical providers'

claims transmitted electronically predicated upon the ongoing scheme to defraud doctors established in Love et

al. v. Blue Cross Blue Shield Association, et al., 574 F.Supp.2d 1288 *(2008),*

*http://www.crowell.com/pdf/managedcare/BCBS_OrderApprovingSettlement4-22-08.pdf*, predicated upon the ongoing scheme to

defraud doctors and patients established in <u>Blue Cross and Blue Shield of Michigan v. Kamin, 876 F.2d 543,</u>

<u>545 (6th Cir.1989)</u> [scheme satisfies RICO by repeatedly bilking the same victim, as here, with 80 pages of

electronic communications with Lillard and his 9 medical providers, a substantial course of conduct evidencing

racketeering activity], and predicated upon the ongoing scheme to engage in health care fraud and to make

false statements and all other racketeering activities outlawed by state law, established in <u>United States v.</u>

<u>Huber</u>, 603 F.2d 387, 393-94 (2d Cir.1979), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

Moreover, RICO violations are based upon 5th [nor shall private property be taken for public use, without just

compensation] & 14th Amendment [nor shall any State deprive any person of life, liberty, or property, without

due process of law]; taking of private property under color of Affordable Care Act regulatory authority.

   13. Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone,

denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and

continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad

faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of

unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to

trebling damages plus attorneys' fees, under RICO.

  COUNT THREE—PREMIUM GOUGING-AFFORDABLE [OBAMA] CARE ANTITRUST VIOLATION

   14. This action is a first party claim by insured-policyholder against behemoth corporate health-

care insurance-abuser Blue, the poster-child of the "health-care crisis," having believed itself and its perennial

unconscionable conduct to be "untouchable." Persistently holding itself out as the "gold-standard" payer of

medical bills, even after passage and Supreme Court approval of the Affordable-Care-Obamacare, Blue is

licensed, regulated, and required to pay its percentage [e.g. 80%] of medical bills above the policyholder's

annual deductible [here $5, or $10k, ??]. Transparently, citizen-policyholders buy health insurance and take

jobs below their skill-levels for health insurance benefits, with the self-evident express reliance upon that

BlueCross will pay their medical bills, leaving them to cover the contractually waivered deductable and

'medigap.' It is an antitrust violation and unconscionable conduct, that Blue engaged in price gouging in

premium rates which rose $125-$178 in recent months, 33% spike despite obscene record profits, during the

same time that Affordable ObamaCare demanded lower rates. The Premium gouging combined with coverage

limitations, in huge incomprehensible books sent by snail mail. When combined with systematic denial of

claims, the obscene profit premium gouging flew in the face of the Affordable ObamaCare Act promised

lowering of premiums. From 2006 to September 2011, "CareFirst BlueChoice, an independent Blue Cross plan

that operates in Northern Virginia, Maryland, and the District of Columbia, experienced a 545% increase in

cumulative net income in six years." http://www.feeling-blue.org/states/va/providers/31., . Affordable ObamaCare Act Sec.

1322(d)(3) "continued application of antitrust laws (A)In general. --Nothing in this section shall be construed to

limited the application of the antitrust laws to any * health insurance issuer *Clayton Act (15 U.S.C.12 (a)

*Federal Trade Commission Act (15U.S.C. 45) * unfair methods of competition." Likewise, HHS regulations

against premium gouging and anticompetitive behavior. Manifestly, McCarran Ferguson exemptions cannot

insulate violation of the intent of Affordable ObamaCare Act, since "creation and operation of accountable care

organizations potentially conflict with the antitrust laws," Thomas Rosch, Federal Trade Commissioner.

http://www.nytimes.com/2011/02/09/health/policy/09health.html?_r=3&emc=tnt&tntemail0=y

## COUNT FOUR--FDCPA

15. Repeating and realleging paragraphs 1-14, Blue, in conspiracy with Bill Collectors, engaged

in billing abuse against Lillard, inasmuch as Lillard's repeated requests for medical billing personnel to

coordinate coverage with Blue, PIP exhaustion, and proper clear understandable balance-due statement, were

ignored. Lillard was subject to dunning by Bill Collectors and denials by Blue, both evidence of conspiracy to

violate FDCPA. Defendant Bill Collectors breached their duty to inquire of their client medical providers the

Blue filing information, to contact Blue, to coordinate the GEICO exhaust trigger for payments, and to collect

their bills from Blue, but failed to do so, choosing rather the 'gangland' style of threats and abuse. Since this

pattern of behavior is pervasive in medical billing industry among health insurers and medical billing

representatives, including defendant herein, thus establishing a reasonable likelihood of future violations by a preponderance of the evidence, that the equitable authority of this court is invoked to correct the abuses.

16. Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone, denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to trebling damages plus attorneys' fees, under FDCPA.

## COUNT FIVE—FDCPA

17. Repeating and realleging paragraphs 1-16, Blue, in conspiracy with Bill Collectors, engaged in billing abuse against Lillard's medical providers, inter alia, by denying and repeatedly demanding more documentation before paying any claim, since this pattern of behavior is pervasive in medical billing industry among health insurers and medical billing representatives, including defendant and medical billing agents of Lillard's medical providers herein. This 'hide-and-seek' stonewalling, red-tape nightmare violates the purpose of FDCPA, "eliminate abusive practices in the collection of consumer debts, to promote fair debt collection, and to provide consumers with an avenue for disputing and obtaining validation of debt information in order to ensure the information's accuracy." http://en.wikipedia.org/wiki/Fair_Debt_Collection_Practices_Act. Thus, there is a reasonable likelihood of future violations by a preponderance of the evidence, so that the equitable authority of this court is invoked to correct the abuses.

18. As a consequence of Blue's conspiracy with Bill Collectors to subvert the collection process, Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone, denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in

negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to trebling damages plus attorneys' fees, under FDCPA.

COUNT SIX--EQUITY

19. Repeating and realleging paragraphs 1-18, since this pattern of behavior is pervasive in medical billing industry among health insurers and medical billing representatives, including defendants herein, thus establishing a reasonable likelihood of future violations by a preponderance of the evidence, Lillard invokes the equitable authority of this court both under RICO and under its equitable authority to correct the abuses. Lillard would submit that divestiture, dissolution, license revocation, and other ameliorative measures should be taken.

WHEREFORE, Lillard demands judgment against defendants in accordance with D.C. Code § 28-3905(g)(5) remedies including punitive damages, treble damages, and/or reasonable attorney's fees, as are reasonable and necessary to identify, correct, or prevent the conduct which violated District law:

A. in the sum of TWO HUNDRED THOUSAND DOLLARS [$200,000] for compensatory damages to Lillard for insurance abuse and cruel claims and collection practices;

B. in the sum of SIX HUNDRED THOUSAND DOLLARS [$600,000], being the trebled damages to Lillard, trebled under CPPA and RICO;

C. in the sum of EIGHT MILLION THREE HUNDRED THIRTY-FOUR THOUSAND DOLLARS [$8,334,000.00], representing punitive damages of 2% of Blue's latest available] *www.feeling-blue.org/states/va/providers/31/fact_sheet*

net income of FOUR HUNDRED SIXTEEN MILLION SEVEN HUNDRED THOUSAND DOLLARS [$416.7 million] for Lillard, punitive damages under CPPA;

D. for attorneys' fees with interest and costs, under CPPA, RICO, and FDCPA,

E. for broad equitable remedy to address unlawful conduct, including ordering intrusive; structural changes in defendant wrongdoers' entities and practices, including divestiture, dissolution, license revocation, and other ameliorative measures as the court deems just, under RICO,

F.   inter alia, for broad equitable RICO remedies to pierce the corporate veil of Blue Cross & & Blue Shield Association, Inc., so as to impose appropriate damage judgments and sanctions demanded herein against the corporate schemes conducted by its alter egos, aliases, dba "Anthem and independent Blue Cross Blue Shield plans * CareFirst BlueChoice, an independent Blue Cross plan that operates in Northern Virginia, Maryland, and the District of Columbia * WellPoint/Anthem, HCSC, or independent nonprofit - operate in every state in the US, and often hold more than 50% of the market share in those states"

G.   for equitable remedy of disgorgement of all premiums paid by Lillard to Blue, under RICO;

H.   for equitable remedy of limitations on future activities, *inter alia*, ordering Blue "medigap" coverage to Lillard without payment of premium, free for life, under RICO;

I.   for equitable remedy, Since RICO provides for injunction to non-parties in various circumstances, of injunction against the above-listed non-party medical providers from collection activities against Lillard during the pendency of this case, or alternatively an invitation to interplead under Rule 22 for reimbursement of unpaid bills; and

J.   for such other and further relief as the court deems just.

Respectfully submitted,

JOHN F. LILLARD, III D.C. Bar 197194
8  LOUDON LANE
ANNAPOLIS, MD. 21401-1219
(410) 268-1900
*Pro-se* & Interim counsel for Lillard & Lillard, P.C.

PRAYER FOR JURY TRIAL

Lillard hereby prays a trial by jury on their claims as set forth in the above complaint.

JOHN F. LILLARD, III

DISTRICT OF COLUMBIA, ss:

John Lillard, being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendants to Lillard, exclusive of all set-offs and just grounds of defense.

Subscribed and sworn to before me this 7th day of January 2013 _/s/_____

(Notary Public/Deputy Clerk)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24TH day of January 2013, a copy of the foregoing SECOND AMENDED COMPLAINT was duly served by efiling, noting that no counsel has entered an appearance, 2 weeks after service of the original complaint:

JOHN F. LILLARD, III



**Superior Court of the District of Columbia**
**Civil Division**
*500 Indiana Ave., N. W., Room 5000*
*Washington, DC 20001*
*202-879-1133*

Lillard & Lillard, P.C.,etc.
_____
                    *Plaintiff*

vs.                                                    **Civil Action No. 2013 CA 00116 B**

Blue Cross and Blue Shield Association, Inc. etc.
_____
                    *Defendant*

### AFFIDAVIT OF SERVICE BY CERTIFIED/REGISTERED MAIL

I, _____John F. Lillard, III_____ under oath do hereby state the following:

That my age and date of birth are as follows: 65, August 2, 1947
That the residential or business address is:   1776 K Street, N.W. Suite 800, Washington, D.C.  20006,
                    [Mailing address]:8  Loudon  Lane, Annapolis, Md. 21401-1219

That a copy of the Initial Order, Complaint and Summons were mailed by the affiant to the above named defendant Blue Cross and Blue Shield Association, Inc by certified mail. That the return receipt attached hereto was signed by Gerald J. Tolso a person of suitable age and discretion residing therein at the Defendant's usual place above, and the said receipt shows the date of delivery as the 8ᵗʰ day of January 2013.  If return receipt does not purport to be signed by the parties named in the Summons, then state specific facts from which the Court can determine that the person who signed the receipt meets the appropriate qualifications for receipt of process as required by SCR (Civil) 4 (c) (2) and 4 (c) (3). **SPECIFIC FACTS:**

**SENDER: COMPLETE THIS SECTION**
- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

lue Cross & & Blue Shield Association, Inc.
110 G Street NW
ashington, DC 20005
rver: William P. White, Commissioner
epartment of Insurance, Securities and
anking810 First Street, NE, Suite 701
ashington, DC 20002

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by ( Printed Name)      C. Date of Delivery
GERALD J. TOLSo                  1-9-13

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)              ☐ Yes

2. Article Number
   (Transfer from          7012 0470 0001 6169 9326

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

_____ 1/4/13
                    Signature

Subscribed and sworn before me this _____ day of 20

_____
Notary/Deputy Clerk

Rev: Nov/12



**Superior Court of the District of Columbia**
**Civil Division**
*500 Indiana Ave., N. W., Room 5000*
*Washington, DC 20001*
*202-879-1133*

Lillard & Lillard, P.C.,etc.
            *Plaintiff*

vs.                                    **Civil Action No. 2013 CA 00116 B**

NCO Financial Systems.
            *Defendant*

### AFFIDAVIT OF SERVICE BY CERTIFIED/REGISTERED MAIL

I, _____John F. Lillard, III_____ under oath do hereby state the following:

That my age and date of birth are as follows: 65, August 2, 1947
That the residential or business address is:   1776 K Street, N.W. Suite 800,Washington, D.C.  20006,
                                [Mailing address]:8  Loudon  Lane, Annapolis, Md. 21401-1219

That a copy of the Initial Order, Complaint and Summons were mailed by the affiant to the above named defendant NCO
*Financial Systems* by certified mail. That the return receipt attached hereto was signed by J.B. Beck a person of suitable
age and discretion residing therein at the Defendant's usual place above. and the said receipt shows the date of delivery as the 11th
day of January 2013. If return receipt does not purport to be signed by the parties named in the Summons, then state
specific facts from which the Court can determine that the person who signed the receipt meets the appropriate
qualifications for receipt of process as required by SCR (Civil) 4 (e) (2) and *4* (c) (3). **SPECIFIC FACTS:**

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature       □ Agent X _____   □ Addressee B. Received by ( Printed Name )  C. Date of Delivery |
| 1. Article Addressed to:  **NCO Financial Systems 7595 Montevideo Road Jessup, MD 20794-9323** | D. Is delivery address different from... □ Yes If YES, enter delivery address below   □ No   JAN 11 2013 |
|  | 3. Service Type  USPS □ Certified Mail   □ Express Mail □ Registered      □ Return Receipt for Merchandise □ Insured Mail   □ C.O.D. 4. Restricted Delivery? (Extra Fee)   □ Yes |
| 2. Article Num   7012 0470 0001 6169 9333 Transfer from service  PS Form 3811, February 2004   Domestic Return Receipt | 102595-02-M-1640 |

                                                              _____1/29/13_____
                                                               **Signature**

Subscribed and sworn before me this _____ day of 20

                                                                   **Notary/Deputy Clerk**

Rev: Nov/12



### Superior Court of the District of Columbia
### Civil Division
*500 Indiana Ave., N. W., Room 5000*
*Washington, DC 20001*
*202-879-1133*

Lillard & Lillard, P.C.,etc.
**Plaintiff**

vs.                                              Civil Action No. 2013 CA 00116 B

First Federal Credit Control.
**Defendant**

### AFFIDAVIT OF SERVICE BY CERTIFIED/REGISTERED MAIL

I, _____John F. Lillard, III_____ under oath do hereby state the following:

That my age and date of birth are as follows: 65, August 2, 1947
That the residential or business address is:   1776 K Street, N.W. Suite 800,Washington, D.C. 20006,
   [Mailing address]:8  Loudon Lane, Annapolis, Md. 21401-1219

That a copy of the Initial Order, Complaint and Summons were mailed by the affiant to the above named
defendant First Federal Credit Control by certified mail. That the return receipt attached hereto was signed by
Bill Kuhn a person of suitable age and discretion residing therein at the Defendant's usual place above, and the
said receipt shows the date of delivery as the unknown day of January2013. If return receipt does not purport
to be signed by the parties named in the Summons, then state specific facts from which the Court can determine
that the person who signed the receipt meets the appropriate qualifications for receipt of process as required by
SCR (Civil) 4 (e) (2) and 4 (c) (3). **SPECIFIC FACTS:**

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature  X _____ ☐ Agent ☐ Addressee  B. Received by (Printed Name)  BILL KUHN  C. Date of Delivery  D. Is delivery address different from item 1? ☐ Yes  If YES, enter delivery address below: ☐ No |
| 1. Article Addressed to:  First Federal Credit Control 24700 Chagrin Blvd Cleveland, OH 44122-5662 | 3. Service Type  ☐ Certified Mail ☐ Express Mail  ☐ Registered ☐ Return Receipt for Merchandise  ☐ Insured Mail ☐ C.O.D.  4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number  (Transfer from service label)  7012 0470 0001 6169 9364 | |
| PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540 | |

Subscribed and sworn before me this ...... day of 20

_____
**Signature**

_____
**Notary/Deputy Clerk**

Rev: Nov/12



### Superior Court of the District of Columbia
### Civil Division
500 Indiana Ave., N. W., Room 5000
Washington, DC 20001
202-879-1133

Lillard & Lillard, P.C., etc.
_____
**Plaintiff**

Civil Action No. 2013 CA 00116 B

vs.

R&R Professional Recovery.
_____
**Defendant**

## AFFIDAVIT OF SERVICE BY CERTIFIED/REGISTERED MAIL

I, _____John F. Lillard, III_____ under oath do hereby state the following:

That my age and date of birth are as follows: 65, August 2, 1947
That the residential or business address is: 1776 K Street, N.W. Suite 800, Washington, D.C. 20006,
[Mailing address]:8 Loudon Lane, Annapolis, Md. 21401-1219

That a copy of the Initial Order, Complaint and Summons were mailed by the affiant to the above named <u>defendant R&R</u> <u>Professional Recovery</u> by certified mail. That the return receipt attached hereto was signed by <u>M Rozy</u> a person of suitable age and discretion residing therein at the Defendant's usual place above, and the said receipt shows the date of delivery as the 9th day of January 2013. If return receipt does not purport to be signed by the parties named in the Summons, then state specific facts from which the Court can determine that the person who signed the receipt meets the appropriate qualifications for receipt of process as required by SCR (Civil) 4 (e) (2) and **4** (c) (3). **SPECIFIC FACTS:**

---

**...ER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**R&R Professional Recovery**
**P.O. Box 21575**
**Pikesville, MD 21282-1575**

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [ ] ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
M Rozy   1-9-13

D. Is delivery address different from Item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from...)   7012 0470 0001 6169 9319

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

Subscribed and sworn before me this ..... day of 20 .....

_____
**Signature**

_____
**Notary/Deputy Clerk**

Rev: Nov/12



**Superior Court of the District of Columbia**
**Civil Division**
*500 Indiana Ave., N. W., Room 5000*
*Washington, DC 20001*
*202-879-1133*

Lillard & Lillard, P.C.,etc.
_____
                **Plaintiff**

vs.                                                    **Civil Action No. 2013 CA 00116 B**

Quantum Practice Management,
_____
                **Defendant**

## AFFIDAVIT OF SERVICE BY CERTIFIED/REGISTERED MAIL

I, _____John F. Lillard, III_____ under oath do hereby state the following:

That my age and date of birth are as follows: 65, August 2, 1947
That the residential or business address is:  1776 K Street, N.W. Suite 800,Washington, D.C.  20006,
                              [Mailing address]:8  Loudon Lane, Annapolis, Md. 21401-1219

That a copy of the Initial Order, Complaint and Summons were mailed by the affiant to the above named
defendant Quantum Practice Management by certified mail. That the return receipt attached hereto was signed
by Victor H Ventura a person of suitable age and discretion residing therein at the Defendant's usual place
above, and the said receipt shows the date of delivery as the 15th day of January 2013. If return receipt does not
purport to be signed by the parties named in the Summons, then state specific facts from which the Court can
determine that the person who signed the receipt meets the appropriate qualifications for receipt of process as
required by SCR (Civil) 4 (e) (2) and *4* (c) (3). **SPECIFIC FACTS:**

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

**ntum Practice Management**
**P.O Box 25339**
**Cleveland, OH 44125**

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  ☐ Agent
                          ☐ Addressee
B. Received by ( Printed Name)      C. Date of Delivery
VICTOR H VENTURA
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Nu    7012 0470 0001 6169 9371
   (Transfer from service label)

PS Form 3811, February 2004      Domestic Return Receipt          102595-02-M-1540

_____
                **Signature**

                **Notary/Deputy Clerk**

Rev: Nov/12

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### (Civil Division)

| | | |
|---|---|---|
| LILLARD & LILLARD, P.C., | : | |
| Plaintiff, | : | 2013 CA 000116 B |
| | | Judge Michael L. Rankin |
| v. | : | Next Event: 04/12/2013 |
| | | Initial Conference |
| BLUE CROSS & BLUE SHIELD | : | |
| ASSOCIATION, INC., *et al.*, | | |
| | : | |
| Defendants. | | |

## DEFENDANT FIRST FEDERAL CREDIT CONTROL'S
## ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Now comes Defendant First Federal Credit Control ("Defendant"), by counsel, and for its

Answer to Plaintiff's Second Amended Complaint ("Complaint"), provides as follows:[1]

### FIRST DEFENSE

Defendant denies the allegations contained in the introduction paragraph of the Complaint.

1. Defendant is without sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint, and therefore denies said allegations.

2. Defendant is without sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint, and therefore denies said allegations.

3. Admitted that under certain circumstances, Defendant may be a "debt collector" as that term is defined in 15 U.S.C. § 1692a(6). Further admitted that Defendant attempted to collect on an account from John Lillard. All other allegations contained in paragraph 3 of Plaintiff's Complaint are denied.

---

[1] Although amending his pleading for the first time, Plaintiff has titled his paper "Second Amended Complaint." Defendant shall refer to this paper using the same title employed by Plaintiff.

1

4.   Defendant is without sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint, and therefore denies said allegations.

5.   Defendant denies the allegations contained in paragraph 5 of the Complaint to the extent the allegations relate to this Answering Defendant.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 5 of the Complaint, and therefore denies said allegations.

6.   Defendant denies the allegations contained in paragraph 6 of the Complaint to the extent the allegations relate to this Answering Defendant.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 6 of the Complaint, and therefore denies said allegations.

7.   Defendant denies the allegations contained in paragraph 7 of the Complaint to the extent the allegations relate to this Answering Defendant.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 7 of the Complaint, and therefore denies said allegations.

8.   Defendant denies the allegations contained in paragraph 8 of the Complaint to the extent the allegations relate to this Answering Defendant.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 8 of the Complaint, and therefore denies said allegations.

9.   Defendant denies the allegations contained in paragraph 9 of the Complaint to the extent the allegations relate to this Answering Defendant.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 9 of the Complaint, and therefore denies said allegations.

10.  Defendant denies the allegations contained in paragraph 10 of the Complaint to the extent the allegations relate to this Answering Defendant.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 10 of the Complaint, and therefore denies said allegations.

11.  Defendant denies the allegations contained in paragraph 11 of the Complaint to the extent the allegations relate to this Answering Defendant.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 11 of the Complaint, and therefore denies said allegations.

12.  Defendant denies the allegations contained in paragraph 12 of the Complaint to the extent the allegations relate to this Answering Defendant.  Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 12 of the Complaint, and therefore denies said allegations.

13.  Defendant denies the allegations contained in paragraph 13 of the Complaint to the extent the allegations relate to this Answering Defendant.  Defendant is without sufficient

knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 13 of the Complaint, and therefore denies said allegations.

14. Defendant denies the allegations contained in paragraph 14 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 14 of the Complaint, and therefore denies said allegations.

15. Defendant denies the allegations contained in paragraph 15 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 15 of the Complaint, and therefore denies said allegations.

16. Defendant denies the allegations contained in paragraph 16 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 16 of the Complaint, and therefore denies said allegations.

17. Defendant denies the allegations contained in paragraph 17 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 17 of the Complaint, and therefore denies said allegations.

18. Defendant denies the allegations contained in paragraph 18 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 18 of the Complaint, and therefore denies said allegations.

19. Defendant denies the allegations contained in paragraph 19 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 19 of the Complaint, and therefore denies said allegations.

20. All other allegations of the Complaint not otherwise specifically admitted or denied herein are denied.

## ADDITIONAL DEFENSES

1. Plaintiff failed to state a claim upon which relief can be granted.

2. At all times Defendant acted in good faith.

3. Defendant did not make any false or misleading representation to Plaintiff or anyone else.

4. Plaintiff did not justifiably rely upon any alleged false or misleading representation.

5.     Plaintiff failed to mitigate any damages which he may have suffered, if any.

6.     Plaintiff has suffered no compensable damages.

7.     At all pertinent times, Defendant acted in good faith reliance on the information provided by other entities not under the control of Defendant.

8.     If Plaintiff was injured or damaged, any and all such injury or damage was as a proximate result of the acts and/or omissions of persons and/or entities not under the control of Defendant.

9.     All actions taken by Defendant were in compliance with all laws, were privileged, and absolutely privileged.

10.    If Plaintiff was injured or damaged, any and all such injury or damage was not foreseeable by Defendant.

11.    Any violation of law, which is specifically denied, was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

12.    Plaintiff's claims are barred by the applicable statute of limitations.

13.    Plaintiff's claims are precluded by the negative defenses of:

    a.     Plaintiff is not a legal entity;
    b.     Plaintiff lacks the capacity to sue; and
    c.     Plaintiff lacks the capacity to sue in a representative capacity.

WHEREFORE, Defendant requests that this Court dismiss Plaintiff's Complaint at Plaintiff's cost, and that Defendant be awarded reasonable attorney fees and costs as provided for under applicable law.

                          /s/
                        James M. Connolly (Bar No. 455140)
                        KRAMER & CONNOLLY
                        465 Main Street
                        Reisterstown, MD 21136
                        Tel.: 410.581.0070
                        Fax: 410.581.1524

                        Attorney for Defendant First Federal Credit Control

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on January 28, 2013, a copy of the foregoing Answer was filed via CaseFileXpress which, in turn, shall deliver an electronic notice of this filing to all counsel who have entered an appearance in this case; and I FURTHER CERTIFY that, on January 28, 2013, a copy of the foregoing Answers was mailed first class, postage prepaid, to:

John F. Lillard, Esquire
8 Loudon Lane
Annapolis, MD 21401-1219

Blue Cross & Blue Shield Association, Inc.
Attn: Office of General Counsel
1310 G Street NW
Washington, DC 20005

R&R Professional Recovery
Attn: Office of General Counsel
P.O. Box 21575
Pikesville, MD 21282-1575

NCO Financial Systems
Attn: Office of General Counsel
7595 Montevideo Road
Jessup, MD 20794-9323

Alacrity Collections Corporation
Attn: Office of General Counsel
PO Box 586
Riva, MD 21140-0486

Quantum Practice Management
Attn: Office of General Counsel
P.O. Box 25339
Cleveland, OH 44125

_____/s/_____
James M. Connolly

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### (Civil Division)

| | |
|---|---|
| LILLARD & LILLARD, P.C., | : |
| Plaintiff, | : |
| v. | :    2013 CA 000116 B |
| |    Judge Michael L. Rankin |
| BLUE CROSS & BLUE SHIELD | :    Next Event : 04/12/2013 Initial Conf. |
| ASSOCIATION, INC., *et al.*, | |
| | : |
| Defendants. | |

## DEFENDANT R&R PROFESSIONAL RECOVERY, INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Now comes Defendant R&R Professional Recovery, Inc. ("Defendant"), by counsel, and

for its Answer to Plaintiff's Second Amended Complaint ("Complaint"), provides as follows:

### FIRST DEFENSE

Defendant denies the allegations contained in the introduction paragraph of the Complaint.

1. Defendant is without sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint, and therefore denies said allegations.

2. Defendant is without sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint, and therefore denies said allegations.

3. Admitted that under certain circumstances, Defendant may be a "debt collector" as that term is defined in 15 U.S.C. § 1692a(6). Further admitted that Defendant attempted to collect on an account from John Lillard. All other allegations contained in paragraph 3 of Plaintiff's Complaint are denied.

4. Defendant is without sufficient knowledge to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint, and therefore denies said allegations.

5. Defendant denies the allegations contained in paragraph 5 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient

1

knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 5 of the Complaint, and therefore denies said allegations.

6.  Defendant denies the allegations contained in paragraph 6 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 6 of the Complaint, and therefore denies said allegations.

7.  Defendant denies the allegations contained in paragraph 7 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 7 of the Complaint, and therefore denies said allegations.

8.  Defendant denies the allegations contained in paragraph 8 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 8 of the Complaint, and therefore denies said allegations.

9.  Defendant denies the allegations contained in paragraph 9 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 9 of the Complaint, and therefore denies said allegations.

10.  Defendant denies the allegations contained in paragraph 10 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 10 of the Complaint, and therefore denies said allegations.

11.  Defendant denies the allegations contained in paragraph 11 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 11 of the Complaint, and therefore denies said allegations.

12.  Defendant denies the allegations contained in paragraph 12 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 12 of the Complaint, and therefore denies said allegations.

13.  Defendant denies the allegations contained in paragraph 13 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 13 of the Complaint, and therefore denies said allegations.

14.  Defendant denies the allegations contained in paragraph 14 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in

paragraph 14 of the Complaint, and therefore denies said allegations.

15. Defendant denies the allegations contained in paragraph 15 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 15 of the Complaint, and therefore denies said allegations.

16. Defendant denies the allegations contained in paragraph 16 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 16 of the Complaint, and therefore denies said allegations.

17. Defendant denies the allegations contained in paragraph 17 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 17 of the Complaint, and therefore denies said allegations.

18. Defendant denies the allegations contained in paragraph 18 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 18 of the Complaint, and therefore denies said allegations.

19. Defendant denies the allegations contained in paragraph 19 of the Complaint to the extent the allegations relate to this Answering Defendant. Defendant is without sufficient knowledge to form a belief as to the truth of the remaining allegations contained in paragraph 19 of the Complaint, and therefore denies said allegations.

20. All other allegations of the Complaint not otherwise specifically admitted or denied herein are denied.

## ADDITIONAL DEFENSES

1. Plaintiff failed to state a claim upon which relief can be granted.

2. At all times Defendant acted in good faith.

3. Defendant did not make any false or misleading representation to Plaintiff or anyone else.

4. Plaintiff did not justifiably rely upon any alleged false or misleading representation.

5. Plaintiff failed to mitigate any damages which he may have suffered.

6. Plaintiff has suffered no compensable damages.

7. At all pertinent times, Defendant acted in good faith reliance on the information provided by other entities not under the control of Defendant.

8.   If Plaintiff was injured or damaged, any and all such injury or damage was as a proximate result of the acts and/or omissions of persons and/or entities not under the control of Defendant.

9.   All actions taken by Defendant were in compliance with all laws, were privileged, and absolutely privileged.

10.   If Plaintiff was injured or damaged, any and all such injury or damage was not foreseeable by Defendant.

11.   Any violation of law, which is specifically denied, was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

12.   Plaintiff's claims are barred by the applicable statute of limitations.

WHEREFORE, Defendant requests that this Court dismiss Plaintiff's Second Amended Complaint at Plaintiff's cost, and that Defendant be awarded reasonable attorney fees and costs as provided for under applicable law.

Respectfully submitted,

_____/s/_____.
James M. Connolly (Bar No. 455140)
**KRAMER & CONNOLLY**
465 Main Street
Reisterstown, MD 21136
Tel.: (410) 581-0070
Fax: (410) 581-1524
Attorney for Defendant R&R Professional
Recovery, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on February 4, 2013, a copy of the foregoing Answer was filed via CaseFileXpress which, in turn, shall deliver an electronic notice of this filing to the following person:

John F. Lillard, III, Esq.
8 Loudon Lane
Annapolis, MD 21401-1219
Tel.: (410) 268-1900
Pro Se & Interim counsel for Lillard & Lillard, P.C.

AND I FURTHER CERTIFY that, on February 4, 2013, a copy of the foregoing Answer was mailed first-class, postage prepaid, to:

Blue Cross & & Blue Shield Association, Inc.
c/o Adam Feinberg, Esquire
Miller & Chevalier Chartered
655 15th St., N.W.
Washington, D.C. 20005

NCO Financial Systems
7595 Montevideo Road
Jessup, MD 20794-9323

Alacrity Collections Corporation
PO Box 586
Riva, Maryland 21140-0486

Quantum Practice Management
Attn: Ms. Patricia B. Ventura
P.O. Box 25339
Cleveland, OH 44125

                              /s/     .
                              James M. Connolly



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

LILLARD & LILLARD, P.C.

Vs.                                                    C.A. No.        2013 CA 000116 B

BLUE CROSS & BLUE SHIELD ASSOCIATION, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge MICHAEL L RANKIN
Date:   January 7, 2013
Initial Conference: 9:30 am, Friday, April 12, 2013
Location:   Courtroom 517
           500 Indiana Avenue N.W.
           WASHINGTON, DC  20001                                      Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

1/15



## Superior Court of the District of Columbia
### CIVIL DIVISION
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

_____
Plaintiff

vs.

Case Number _____

_____
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_____
Name of Plaintiff's Attorney

_____
Address

_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화하시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION
500 Indiana Ave., N.W., Rm-JM-170
Washington, D.C. 20001

LILLARD & LILLARD, P.C.
1776 K STREET, N.W. SUITE 800
WASHINGTON, D.C.  20006
    MAILING ADDRESS:  8  LOUDON LANE
                    ANNAPOLIS, MD. 21401-1219,

        *Plaintiff,*

v.

Blue Cross & & Blue Shield Association, Inc.
1310 G Street NW
Washington, DC 20005

      Serve:  William P. White, Commissioner
              Department of Insurance, Securities and Banking
              810 First Street, NE, Suite 701
              Washington, DC 20002

R&R Professional Recovery
P.O. Box 21575
Pikesville, MD 21282-1575

NCO Financial Systems
7595 Montevideo Road
Jessup, MD 20794-9323

First Federal Credit Control
24700 Chagrin Blvd.
Cleveland, OH 44122-5662

          and

Quantum Practice Management
P.O Box 25339
Cleveland, OH 44125

        *Defendants.*

RECEIVED
Civil Clerk's Office
JAN 0 7 2013
Superior Court of the
District of Columbia
Washington, D.C.

CIVIL Action No.

---

COMPLAINT FOR TRIAL BY JURY FOR COMPENSATORY, PUNITIVE, AND TREBLE DAMAGES
FOR OLIGOPOLISTIC CORPORATE BAD FAITH AND VIOLATION OF THE DISTRICT OF
COLUMBIA UNLAWFUL TRADE PRACTICES ACT, RACKETEER INFLUENCED & CORRUPT
ORGANIZATION ACT. AND FEDERAL FAIR DEBT COLLECTION PRACTICES ACT

Jurisdiction of this court is founded on D.C. Code Annotated, 1973 edition, as amended, Sec. 11-921, Unlawful Trade Practices act of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 et seq., 28-3904(r), 28-3905(k)(1)( C),   Racketeer Influenced & Corrupt Organization Act ["Civil RICO"], 18 U.S.C. §§ 1961-1968 [18 U.S.C. §§ 1961-1968 for insurance abuse, for denying coverage under provisions of insurance policy contracts, denying legitimate medical provider claims, denying medical provider claims even after "PIP exhaust," failing to exchange information with collection agencies about PIP exhaust, medical provider claims and for bad faith violation of certain duties and of the covenant of good faith and fair dealing [incorporating by reference allegations and findings in Athridge v. Aetna Cas. & Sur. Co., 351 F.3d 1166, 1171 (D.C. Cir. 2003) [hereinafter "Athridge"]; and for wrongful abusive dunning collection practices in violation of the Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq,

1.   Plaintiff Lillard & Lillard, P.C. ["Lillard"] is a legal practice incorporated in the District of Columbia, whose surviving principal John F. Lillard, III is resident practicing Washington, D.C. attorney.

2.   Defendant Blue Cross & & Blue Shield Association, Inc. [herein "Blue"] dba various entities are licensed insurance companies for health insurance coverage, mandated to behave in the public interest, headquartered and doing  business in the District of Columbia, and amenable to CPPA jurisdiction under the doctrine of Athridge v. Aetna Cas. & Sur. Co., 351 F.3d 1166, 1171 (D.C. Cir. 2003), and amenable to RICO jurisdiction under the doctrine of *Humana, Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) having entered into a health insurance plan with Lillard  under policy ID number 900566526, and having processed health insurance claims following a motor vehicle accident a year ago January 7, 2012:

| Dr. Trent, Orthopaedist | Actual | 3592.29 |
|---|---|---|
| Dr. Jahan, Neurologist | Actual | 680.09 |
| Rachel Strass, Acupuncture | Actual | 3954.00 |
| PT-AAHS | Actual | 3071.27 |
| MRI [lumbar] | Actual | 1412.00 |
| MRI [cervical] | Actual | 1412.00 |

| AAHS ER Radiologist's bill | Actual | 510.00 |
| AAHS Hospital ER | Actual | 413.36 |
| AAHS Hospital ER doctor | Actual | 373.00 |
| Total Medical Charges | | **$15,418.01** |

These bills were also considered by PIP carrier GEICO under claim number 000-786-340-0101, for which

$10,000 PIP benefits were paid out, and an "exhaustion letter" dated September 5, 2012 was issued 4 months

**GEICO.**
geico.com

- Government Employees Insurance Company
- GEICO General Insurance Company
- GEICO Indemnity Company
- GEICO Casualty Company

P.O. Box 9505
Fredericksburg, VA 22403-9504

9/5/2012

John Lillard
8 Louden Ln
Annapolis, MD 21401-1219

Company Name:      Government Employees Insurance Company
Claim Number:      000786340-0101-147
Loss Date:         Saturday, January 7, 2012
Policyholder:      John Lillard
Injured Party:     John Lillard

Dear John Lillard,

The Medical coverage and/or Personal Injury Protection available to you on the claim specified above has been exhausted. Therefore, we will not be able to make any further payment for medical expenses you incurred as a result of this accident.

You may be entitled to additional benefits from your health insurance company. Any further medical bills should be submitted to your health insurer with a copy of this letter.

If you have any questions, contact me at the number below. Please refer to your claim number when writing or calling about this claim.

Sincerely,

Lisa Castellanos, Examiner Code FF95
(540)286-4093
Claims Department

ago                                                    . Despite the GEICO PIP exhaustion

[under protest, since Blue had a duty to pay notwithstanding 'collateral source' of PIP exhaust], Blue failed to

pay, Blue failed to contact, Blue failed to inform, or Blue failed to re-consider $15,418.01 in bills, despite its

coverage subject only to its "individual annual deductible of $5,000

## SUMMARY OF BENEFITS

1.   Name:

2.   Membership Number:

3.   Effective Date:

This Policy is subject to:

1.   an individual annual deductible of $5,000 dollars;

2.   an annual family aggregate deductible of $10,000 dollars; and,

3.   an individual out-of-pocket limit of $6,000 dollars.

Coinsurance Schedule:

All Policy benefits are paid at 80% of the Allowed Benefit, except for outpatient services to treat mental illnesses, emotional disorders, drug abuse, or alcohol abuse including psychological and neuropsychological testing for psychological diagnostic purposes (See Section 4.19 C.) Benefits provided for these visits are based on 80% of the Allowed Benefit for the first 5 visits that occur in a calendar year, 65% of the Allowed Benefit for the 6th through 30th visit, and 50% of the Allowed Benefit for the 31st visit and any visits thereafter. These visits are subject to the deductible.

NOTE:   See Section 2.8 Services Covered at 100% of the Allowed Benefit for services covered at 100% of the Allowed Benefit.

Preventive Benefits (see Section 4.11) are paid at 100% after a $10.00 copayment by the Member.

dollars                                                                                 Accordingly, Blue has in one year of

claims handling paid nearly nothing toward the GEICO-audited $15,418.01 in bills, but rather inundated its

policyholder with 80 pages of Explanation of Benefits forms showing claims were denied and Blue paid zero.











Self-evidently, of the $15,418.01 in bills, GEICO accepted at least its $10,000 PIP limits, so Blue's refusal to pay or accept or consider even those bills above the $5000 deductible was unlawful. Lillard, Blue's policyholder, paid Blue $178/month in health insurance premiums and received no benefits.

3.   Defendants R&R Professional Recovery Inc, NCO Financial Systems, Inc., First Federal Credit Control, Inc and Quantum Practice Management ["Bill Collectors"] are collection agencies licensed in the public interest to conduct business in the District of Columbia, and to conduct themselves in accordance with fair collection practices, but mercilessly dunned Lillard by mail and by telephone.  Defendants engaged in abusive collection practices, despite Lillard's cease & desist instruction.  Lillard demanded Bill Collectors contact GEICO regarding its exhaustion and bill Blue as instructed, when Lillard was treated by health care providers for whom the collection agencies conducted their unlawful dunning, since the Bill Collectors provider-principals had an ethical and legal duty to bill Blue, and send balance due bills for the approximately 20% uncovered amounts, which Lillard directed be paid by PIP. Rather than make proper contact with Blue and GEICO, the Bill Collectors threatened to ruin Lillard's credit, a foreseeable consequence of the conspiracy between Blue and medical Bill Collectors.

## COUNT ONE--CPPA

4.   Repeating and realleging paragraphs 1-3, Blue's negotiation of Lillard's claims involved intentional disparagement, delays, obfuscation, and rude bad faith, falsely denying coverage. The aforementioned conduct by the Defendant was extreme, outrageous, cruel, and beyond the limits of decency in society.  The Defendant's aforementioned conduct was malicious, willful, and intentional, conspiring to wrap up the process in red tape to discourage patients from receiving benefits.

5.   Lillard had a right to instruct, expect, and assume his health care providers would coordinate their billing efforts to collect from Blue, to convince Blue that after the GEICO PIP exhaust, since  the $15,418.01 in bills, far exceeded the Blue $5000 annual deductible, and that the balance must have been paid. Since over $5000 in PIP benefits actually paid the providers, Lillard had a right to assume that the balance of $15,418.01 in bills would have been paid in full by Blue. Lillard had a right to assume that medical providers would not sick Bill Collectors on Lillard, nor threaten his credit rating, but professionally collect from Blue at

16

least the 80% allowable, then bill Lillard for the balance, so as to allow Lillard to allocate PIP funds to the balances due. Self-evidently, Lillard had a right to assume that Blue would reimburse Lillard for the amounts previously paid to providers by GEICO, leaving funds with which to cover the 20% unpaid balances.

6. Despite repeated attempts to clarify Blue's participation in the Medicare supplemental arrangements, Lillard received a cancelation notice from Blue dated October 21, 2012, rather than an orderly transformation into a "medigap" policy, in light of his having turned 65 on August 2, 2012, received his Medicare card, thus no longer needing the same personal Blue coverage, and having sought clarity around Blue's Medigap coverage. But Blue was evasive, and the Blue Medicare online process was unfathomable. Lillard's inquiries and premium payment issues were reasonable, where he cannot be deemed to have unclean hands nor in *pari delicto*.

7. Blue's red-tape chiseling, intimidating, non-payment of claims, and ham-handed conduct has produced obscene profits, where during the worst U.S. recession since the Great Depression, Blue's net income has skyrocketed. For example, in depressed Illinois Blue's net income was $1.75 Billion annualized http://www.chicagorealestatedaily.com/article/20110618/ISSUE01_306189984/blue-cross-profits-surge; Blue's net income was $107.3 million in North Carolina http://insurancenewsnet.com/article.aspx?id=219434&type=Health&it=UST/US_LT and from 2006 to September 2011, "CareFirst BlueChoice, an independent Blue Cross plan that operates in Northern Virginia, Maryland, and the District of Columbia, experienced a 545% increase in cumulative net income in six years." http://www.feeling-blue.org/states/va/providers/31.. . Properly instructed, should the jury find a CPPA violation, the average jury award for punitive damages is 2% of net income, which for CareFirst is $416.7 million, www.feeling-blue.org/states/va/providers/31/fact_sheet resulting in a punitive damages award of $8,334,000.00.

FEELING BLUE

A LOOK AT BLUE CROSS BLUE SHIELD
BUSINESS PRACTICES.

Anthem and independent Blue Cross Blue Shield plans have been amassing record profits and increasing market dominance throughout the US for more than 20 years. Feeling Blue takes a look at the facts on a state-by-state basis, following news, trends, and financials for the up-to-date look at both Anthem and independent Blue Cross Blue Shield plans. Read on for detailed information and contact us to share your thoughts.

CareFirst BlueChoice, an independent Blue Cross plan that operates in Northern Virginia, Maryland, and the District of Columbia, experienced a 545% increase in cumulative net income in six years. During a similar timeframe, member enrollment and MLR, the percent of every premium dollar spent on care, experienced a steady decline.

**Why This Matters**
The health care industry is complicated. Transparency and accountability are critical when it comes to empowering consumers to make the best decisions with something as important as health care coverage. History tells us that those priorities might not carry as much weight for health insurance providers when it comes to their own business, but one thing is for sure - knowing more helps us make better choices. Blue Cross Blue Shield plans - whether WellPoint/Anthem, HCSC, or independent nonprofit - operate in every state in the US, and often hold more than 50% of the market share in those states. Dominant market share comes with serious responsibilities to the public, to the health care system, and to the health plan's own customers - the employers, government entities, seniors, and individual policyholders who pay for insurance coverage. The goal of Feeling Blue is to provide a "one-stop-shop" for important facts, figures, media coverage, and analyst reports for one of our nation's largest health insurance organizations, WellPoint/Anthem and the independent Blue Cross Blue Shield Association. Payers and health care providers alike must be held accountable for their actions and transparency helps make this happen.



**Net Income (in millions)**
From 2006 to September 2011, CareFirst's cumulative net income increased 545%. In 2010, their actual net income was nearly four times the amount from 2009.

**Historical Member Enrollment v. Net Income**
In 2010, membership dropped by 16,000 members while net income increased by $118.1 million.

**Historical MLR**
According to the Affordable Care Act passed in 2009, health plans are required to spend a minimum of 80% of the premium dollar to pay for care, 85% for large groups. In 2010, CareFirst was 12.9% below the coming legally required amount insurers spend on members' care. This means Care First is spending far less of the premium dollar on actual care than it should be spending.

8. Lillard continues to be damaged, including suffering great mental anguish and psychological

damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations.

9.   Blue, in conspiracy with Bill Collectors, engaged in behavior which a jury must find unconscionable, in violation of CPPA.

10. Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone, denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to trebling and punitive damages plus attorneys fees, under CPPA.

### . COUNT TWO--RICO

11. Repeating and realleging paragraphs 1-10, Blue, in conspiracy with Bill Collectors, engaged in racketeering conduct to defraud medical providers and Lillard policyholder, which a jury must find violated RICO for civil penalties since a racketeering act may be based on "aiding and abetting," since scienter may be established by the collective knowledge of the Blue and Bill Collector employees and representatives, since this pattern of behavior is pervasive in medical billing industry among health insurers and medical billing representatives, including defendant herein, thus establishing a  reasonable likelihood of future violations by a preponderance of the evidence, that the equitable authority of this court is invoked to correct the abuses.  The RICO claim is predicated upon violations of the mail fraud statute, 18 U.S.C. § 1341, since denial of claims beyond the $5000 deductible is fraudulent, upon Blue's conspiracy with Bill Collectors, and Blue's fraudulent denial of medical providers' claims transmitted electronically, thus wire fraud 18 U.S.C. § 1343. The ongoing scheme to defraud doctors, was established in Love et al. v. Blue Cross Blue Shield Association, et al., *574 F.Supp.2d 1288* (2008),  http://www.crowell.com/pdf/managedcare/BCBS_OrderApprovingSettlement4-22-08.pdf; see Blue Cross and Blue Shield of Michigan v. Kamin, 876 F.2d 543, 545 (6th Cir.1989), single scheme state a violation of civil RICO simply by repeatedly bilking the same victim, as here, 80 pages of electronic

communications with 9 medical providers, a substantial course of conduct evidencing racketeering activity. United States v. Huber, 603 F.2d 387, 393-94 (2d Cir.1979), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Moreover, RICO violations are based upon 5th [nor shall private property be taken for public use, without just compensation] & 14th Amendment [nor shall any State deprive any person of life, liberty, or property, without due process of law]; taking of private property under color of Affordable Care Act regulatory authority.

12. Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone, denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to trebling damages plus attorneys' fees, under RICO.

## COUNT THREE--FDCPA

13. Repeating and realleging paragraphs 1-12, Blue, in conspiracy with Bill Collectors, engaged in billing abuse, since this pattern of behavior is pervasive in medical billing industry among health insurers and medical billing representatives, including defendant herein, thus establishing a reasonable likelihood of future violations by a preponderance of the evidence, that the equitable authority of this court is invoked to correct the abuses.

14. Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone, denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to trebling damages plus attorneys' fees, under FDCPA.

## COUNT FOUR--FDCPA

15. Repeating and realleging paragraphs 1-14, Blue, in conspiracy with Bill Collectors, engaged in billing abuse, inasmuch as Lillard's repeated requests for medical billing personnel to coordinate coverage with Blue, PIP exhaustion, and proper clear understandable balance-due statement, were ignored, but Lillard was subject to dunning and denials. Defendant Bill Collectors breached their duty to inquire of their client medical providers the Blue filing information, to contact Blue, to coordinate the GEICO exhaust trigger for payments, and to collect their bills from Blue, but failed to do so, choosing rather the 'gangland' style of threats and abuse. Since this pattern of behavior is pervasive in medical billing industry among health insurers and medical billing representatives, including defendant herein, thus establishing a reasonable likelihood of future violations by a preponderance of the evidence, that the equitable authority of this court is invoked to correct the abuses.

16. Lillard has suffered damage by receipt of nearly 100 contacts by mail and by telephone, denying payment of his medical bills without recourse, loss of his reputation and creditworthiness, and continues to be damaged, including suffering great mental anguish and psychological damage, by Blue's bad faith violation of certain duties and of the covenant of good faith and fair dealing, and enforcement of unconscionable policy terms in negotiations, in conspiracy with Bill Collectors. Lillard's damages are subject to trebling damages plus attorneys' fees, under FDCPA.

## COUNT FIVE--EQUITY

17. Repeating and realleging paragraphs 1-16, since this pattern of behavior is pervasive in medical billing industry among health insurers and medical billing representatives, including defendants herein, thus establishing a reasonable likelihood of future violations by a preponderance of the evidence, Lillard invokes the equitable authority of this court to correct the abuses. Lillard would submit that divestiture, dissolution, license revocation, and other ameliorative measures should be taken.

WHEREFORE, Lillard demands judgment against defendants in accordance with D.C. Code § 28-3905(g)(5) remedies including punitive damages, treble damages, and/or reasonable attorney's fees, as are reasonable and necessary to identify, correct, or prevent the conduct which violated District law:

1.   in the sum of  TWO HUNDRED THOUSAND DOLLARS [$200,000] for compensatory damages to Lillard for insurance abuse and cruel claims and collection practices;

2.   in the sum of  SIX HUNDRED THOUSAND DOLLARS [$600,000], being the trebled damages to Lillard;

3.   in the sum of  SIX HUNDRED THOUSAND DOLLARS [$600,000], being the trebled damages to Lillard for covered claim reimbursement for total loss of structure and loss of use;

4.   in the sum of EIGHT MILLION THREE HUNDRED THIRTY-FOUR THOUSAND DOLLARS [$8,334,000.00], representing punitive damages of 2% of Blue's latest available] *www.feeling-blue.org/states/va/providers/31/fact_sheet*

net income of FOUR HUNDRED SIXTEEN MILLION SEVEN HUNDRED THOUSAND DOLLARS [$416.7 million] for Lillard;

5.   for attorneys' fees with interest and costs,

6.   for broad equitable remedy to address unlawful conduct, including ordering intrusive; structural changes in defendant wrongdoers' entities and practices, including divestiture, dissolution, license revocation, and other ameliorative measures  as the court deems just,

7.   for disgorgement of all premiums paid by Lillard to Blue;

8.   for limitations on future activities, *inter alia*, ordering  Blue "medigap" coverage to Lillard without payment of premium, free for life;

9.   Since RICO provides for injunction to non-parties in various circumstances, for injunction against the above-listed non-party medical providers from collection activities against Lillard during the pendency of this case, or alternatively an invitation to interplead under Rule 22 for reimbursement of unpaid bills; and

10. for such other and further relief as the court deems just.

Respectfully submitted,

JOHN F. LILLARD, III D.C. Bar 197194
8  LOUDON LANE
ANNAPOLIS, MD. 21401-1219
(410) 268-1900
*Pro-se* & Interim counsel for Lillard & Lillard, P.C.

## PRAYER FOR JURY TRIAL

Lillard hereby prays a trial by jury on their claims as set forth in the above complaint.

_____

JOHN F. LILLARD, III

DISTRICT OF COLUMBIA, ss:

John Lillard, being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendants to Lillard, exclusive of all set-offs and just grounds of defense.

_____

Subscribed and sworn to before me this_____day of January 2013_____

(Notary Public/Deputy Clerk)